**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | CR. No. C-91-233 |
| v. | § | (C.A. No. C-11-245) |
| | § | |
| MARK ANTHONY WAGNER, | § | |
| | § | |
| Defendant/Movant. | § | |

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE AND ORDER DENYING
<u>CERTIFICATE OF APPEALABILITY</u>**

Pending before the Court is Mark Anthony Wagner's (Wagner) motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, with supporting memorandum and Affidavit. D.E. 499, 500, 501[1] Also before the Court is the government's response, and Wagner's Reply.  D.E. 503, 507. For the reasons set forth herein, Wagner is not entitled to relief. Accordingly, Wagner's § 2255 motion is denied, and the Court also denies him a Certificate of Appealability.

**I.  JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

---

[1]  Unless otherwise noted, docket entry references are to the criminal case.

1

## II. BACKGROUND

Wagner was first arrested in September 1989 and released on bond. He was indicted on May 21, 1991, in a multi-count indictment that also included ten others. The indictment charged a conspiracy to possess with intent to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B), along with possession with intent to distribute approximately 204 kilograms of marijuana. D.E. 1. Two other counts did not mention Wagner. Id. Wagner was again arrested in June 1991, but was released on bond. D.E. 9.

Wagner's original arrest occurred at the Robstown airport after 204 kilograms of marijuana was loaded on board a small airplane he owned. D.E. 474 at 23-26. He and co-defendant Baumhardt had agreed to fly the marijuana from Corpus Christi, Texas to Chicago, Illinois for another member of the conspiracy. Id

Wagner pled guilty to Count One pursuant to a plea agreement with the government that would result in dismissal of Count Three. D.E. 174.[2] At the government's request,

---

[2]  The government described the agreement as follows,

8 MR. CUSICK: Yes, your Honor. In the case of
9 Mr. Wagner, in exchange for his plea of guilty to count one,
10 the government has agreed pursuant to a Rule 11(e)(1)(B)
11 agreement to limit its proof to 204 kilograms of marijuana;
12 recommend acceptance of responsibility; and a sentence at the
13 bottom of the applicable guideline. In addition, the
14 government will move to dismiss count three at sentencing and
15 make a motion for downward departure if substantial cooperation
16 is provided. The amount of downward departure would be in the
17 sole discretion of the Court to determine.

Wagner was continued on bond. D.E. 474 at 27-28. At that time, the government anticipated that Wagner would assist with its trial preparation against the remaining defendants. Id.

After rearraignment, Wagner was permitted to return home to Chicago. He did not check in with Pretrial Services as required. He was scheduled for sentencing on November 15, 1991, but did not appear. The Court issued a pretrial warrant for Wagner due to his failure to report to Pretrial Service and his failure to appear for sentencing in December 1991. D.E. 247.

Wagner was arrested eighteen years later in September 2009 when he arrived at the Charlotte, North Carolina airport from Germany using the name Lothar Starsinsky and traveling under a German passport. He was identified by his fingerprints. See Docket Entry September 11, 2009, D.E. 491 at 19-20, 24.

Wagner was returned to the Southern District of Texas and appointed new counsel. D.E. 471. Sentencing was rescheduled for October 26, 2009. An Amended Final Presentence Report (PSR) was prepared. D.E. 480.

The Amended PSR calculated Wagner's base offense at 26 based upon the quantity of marijuana seized, 204 kilograms. D.E. 480 at ¶ 24. The Probation Department added two points based upon Wagner's use of a special skill, his ability to pilot an airplane, which facilitated commission of the offense. Id. at ¶ 27 (§ 3B1.3). He was assessed two additional

---

Id. at 16.

3

points for obstruction of justice, due to his failure to appear for 18 years.[3] Id. at ¶¶ 21, 28. He did not get credit for acceptance of responsibility due to his failure to appear for sentencing and his obstruction of justice. Id. at ¶ 30. Wagner's total offense level was calculated to be 30. Wagner had no criminal history, resulting in a criminal history category I. Id. at ¶ 36. His sentencing range was 97 to 121 months imprisonment, with a statutory minimum sentence of 5 years. Id. at ¶¶ 54-55.

Wagner filed objections to the PSR. D.E. 478. He objected to the assessment of points for obstruction of justice and for use of a special skill, along with the failure to grant him acceptance of responsibility. Wagner also objected to various factual assertions in the PSR. Id.

Sentencing was held in October 2009. D.E. 483, 491. The Court overruled Wagner's objection to lack of credit for acceptance of responsibility. D.E. 491 at 7. The Court also overruled Wagner's objection to obstruction of justice. D.E. 491 at 26. The Court sentenced Wagner to 99 months in the custody of the Bureau of Prisons, to be followed by a five-year supervised release term, and imposed a $100 special assessment. D.E. 491 at 30. Judgment was entered on the Court's docket on October 29, 2009. D.E. 484.

---

[3] The applicable sentencing guideline provision is § 3C1.1. The application note identifies conduct that warrants application of obstruction of justice points which includes, "escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding." U.S.S.G. § 3C1.1, application note (4)(e). Covered conduct also includes "providing a materially false information to a judge or magistrate." Id., application note 4(f).

Wagner timely appealed. D.E. 486. The Fifth Circuit affirmed the judgment. D.E. 497. Wagner filed his timely § 2255 motion.

### III.  MOVANT'S ALLEGATIONS

Wagner raises several claims of ineffective assistance of counsel. He first claims, "Ineffective assistance of counsel during the district court's proceedings," then references his Memorandum of Law. D.E. 499 at 3. The Memorandum states that counsel failed to investigate the facts and circumstances of the offense. Wagner claims that two officers from the Nueces County Sheriff's department were suspended and no longer employed due to misconduct. He claims counsel should have investigated to determine whether the alleged misconduct would affect Wagner's defense to the charges before advising Wagner to plead guilty.  D.E. 501 at 5-6.

Ground Two claims ineffective assistance during arraignment and plea and again references his Memorandum of Law. D.E. 499 at 3. In the Memorandum of Law, Wagner claims that his guilty plea was not knowing or voluntary because counsel failed to explain the elements of conspiracy to him. He also claims that he was not guilty of the conspiracy because he did not give consent for anyone to load marijuana on his airplane and counsel was ineffective for encouraging him to plead guilty when the evidence against him was insufficient. He claims he was trying to exit the conspiracy rather than participate in the conspiracy. D.E. 501 at 9-10. Wagner further alleges that the district court did not comply with Rule 11 of the Federal Rules of Criminal Procedure. Id.

Next Wagner claims that counsel was ineffective at sentencing because counsel failed to object to, 1) the addition of points for use of a special skill, 2) the enhancement for obstruction of justice and 3) the violation of Wagner's rights pursuant to the Vienna Convention. D.E. 499 at 4, 501 at 14-19. Included in this ground is Wagner's claim that that he was prevented from speaking with the German consulate in violation of the Vienna Convention.[4] D.E. 501 at 19.

Wagner claims that he did not commit perjury when he testified at his 1991 rearraignment that he was a United States citizen. D.E. 501 at 25. He claims that counsel was ineffective at sentencing because he failed to demonstrate to the Court that Wagner was a United States citizen. Id. at 20-25.[5] Wagner additionally claims that he is entitled to an evidentiary hearing. D.E. 501 at 26.

---

[4]  The Vienna Convention is a 79-article treaty that was ratified by the United States in 1969. Article 36 of the treaty provides that a consular officer of a signatory state shall have the right to visit one of its citizens who has been detained in another signatory state in order "to converse and correspond with him and to arrange for his legal representation," and also requires the detaining state to inform the person concerned about his rights "without delay." See generally Cardenas v. Dretke, 405 F.3d 244, 251 (5th Cir. 2005), but see Medellin v. Dretke, 544 U.S. 660 (2005) (dismissing the writ of certiorari as improvidently granted in a case raising the issue of whether federal courts are bound by the International Court of Justice's ruling that the Vienna Convention confers individually enforceable rights on detained aliens); Breard v. Greene, 523 U.S. 371, 376 (1998) (noting that the Vienna Convention "arguably" confers a right to consular assistance on an alien following arrest); United States v. Jimenez-Nava, 243 F.3d 192, 198-200 (5th Cir. 2001) (rejecting the defendant's arguments that the Vienna Convention confers a judicially enforceable right on a detained alien to contact his consulate and holding that the government's failure to inform a detainee of such a right does not warrant suppression of evidence).

[5]  Wagner's Memorandum of Law claims that he discussed the circumstances of his birth with his first lawyer, id. at 20, and that counsel II "was fully aware of the petitioner's belief [that he was a U.S. citizen] and was questioned by the petitioner when he did not object to the finding." Id.

The government urges dismissal of Wagner's claims on the grounds that they are contradicted by the record or do not have merit. D.E. 503. Wagner's reply reasserts his original claims. D.E. 507.

## IV.  ANALYSIS

### A.  28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

Where a defendant fails to raise an issue in his criminal proceedings, that issue is procedurally barred from consideration in § 2255 proceedings. See United States v. Lopez, 248 F.3d 427, 433 (5th Cir. 2001); United States v. Kallestad, 236 F.3d 225, 227 (5th Cir. 2000). A district court may consider a defaulted claim only if the petitioner can demonstrate either (1) cause for his default and actual prejudice, or (2) that he is actually innocent of the

crime charged. <u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998); <u>United States v. Jones</u>, 172 F.3d 381, 384 (5th Cir. 1999).

### B. Procedural Bar

#### 1. *Violation Vienna Convention*

This Court need not decide whether Wagner had any individually enforceable right to consular assistance because his claim is procedurally barred. Wagner did not raise this issue on appeal or at any other point prior to his § 2255 motion, and he has not alleged or demonstrated either "cause and prejudice" or "actual innocence" in order to overcome the procedural bar. <u>See</u> <u>Sanchez-Llamas v. Oregon</u>, 548 U.S. 331, 360 (2006) (holding that "claims under Article 36 of the Vienna Convention may be subjected to the same procedural default rules that apply generally to other federal-law claims"); <u>see also</u> <u>Cardenas v. Dretke</u>, 405 F.3d 244, 253 (5th Cir. 2005) (Vienna Convention claims, like Constitutional claims, are subject to the habeas procedural default rules).

#### 2. *District Court did not comply with Rule 11*

Wagner claims that the Court did not properly admonish him at rearraignment pursuant to Federal Rule of Criminal Procedure 11 and the Court did not ensure a factual basis for his guilty plea. D.E. 501 at 12-13. These claims were not raised in the District Court, nor were they raised on appeal. For this reason both claims are procedurally barred and may not be considered. <u>See</u> <u>Pierce</u>, 959 F.2d at 1301. Additionally, both claims are contradicted by the record and if considered on their merits, would fail. <u>See</u> D.E. 474 at 11-26.

### 3. *Wagner's claim that he is a United States citizen*

Wagner makes two claims related to his citizenship testimony, first that he did not commit perjury when he testified that he was a United States citizen in 1991, and secondly, that counsel was ineffective because he failed to prove Wagner's citizenship to the district court at sentencing. The first claim is procedurally barred because it was not raised previously and Wagner has not demonstrated cause for that failure. The second claim will be addressed in Part III(C)(8), *supra*.

### C.   **Ineffective Assistance of Counsel**

#### 1. *General standards*

An ineffective assistance of counsel claim is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001).

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter

v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

> 2. *Claim that counsel was ineffective by encouraging him to plead guilty when the evidence against him was insufficient*

Wagner claims that counsel was ineffective because he encouraged Wagner to plead guilty to conspiracy when counsel knew that the evidence against him was insufficient. According to Wagner, the evidence was insufficient because Wagner was trying to exit the conspiracy and did not give permission for the marijuana to be loaded on his airplane. Wagner's complaint is contradicted by his testimony at rearraignment.

During rearraignment, Wagner admitted that he willingly participated in the conspiracy. The government described the facts it expected to be able to prove as to Wagner's conduct which included, Wagner's purchase of the airplane at issue, his discussions with his co-conspirators Baumhardt, Peterman, and Gabellini of the possibility of using the airplane to fly loads of marijuana from South Texas to Chicago, and Wagner's agreement to transport marijuana from Corpus Christi, Texas to Chicago, Illinois for other members of the conspiracy. D.E. 474 at 21-22, 24-25. According to the government, Wagner flew his plane from Chicago to Corpus Christi on September 15, 1989. Id. at 23. The next morning, after Baumhardt paid the undercover officers for the marijuana, one officer took Wagner to the airplane so that Wagner could install a navigation system and make sure everything was ready to go. Baumhardt arrive a little later. Later that morning, the undercover officers arrived in a van with 13 bundles of marijuana. Id. at 24. As the van

approached, Wagner opened the cargo door to allow the marijuana to be loaded onto the aircraft. Id. The Court inquired of Wagner, "Is that what happened in the case, Mr. Wagner?" Id. at 25. Wagner responded, "Yes, sir." Id.

The Court questioned Wagner further,

> 4 THE COURT: All right. Did the two of you enter this
> 5 agreement willingly and knowingly with the officers here,
> 6 knowing that you were intending to buy marijuana? That was
> 7 your intentions of coming to Corpus Christi?
> 8 DEFENDANT WAGNER: Yes, sir.
>        *      *      *      *
> 10 THE COURT: And when Mr. Cusick says that you were
> 11 negotiating through Mr. Gibellini to buy this marijuana, is
> 12 that also true?
> 13 DEFENDANT WAGNER: Yes, sir.
>        *      *      *      *
> 15 THE COURT: What did you intend to do with the
> 16 marijuana that you acquired, Mr. Wagner?
> 17 DEFENDANT WAGNER: Transport it.
> 18 THE COURT: Mr. Baumhardt?
> 19 DEFENDANT BAUMHARDT: To bring it to Chicago.
> 20 THE COURT: What did you intend to do with it when
> 21 you got to Chicago?
> 22 DEFENDANT BAUMHARDT: Sell it.
> 23 THE COURT: Did you have a role in that, in the sale,
> 24 or were you just --
> 25 DEFENDANT WAGNER: I was just the pilot.

Id. at 25-26.

Wagner's sworn statements in open court are entitled to a strong presumption of truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302

F.3d 279, 283-84 (5th Cir. 2002). Because Wagner admitted that he willingly and knowingly agreed with others to transport marijuana for the purpose of distribution, his claim that his attorney's advice to plead guilty when the evidence against him was insufficient fails.

### 3. *Counsel's alleged failure to investigate*

Wagner claims that the firing of two unnamed Nueces County Sheriff's deputies involved in the investigation of his offense tainted the investigation. He claims that his first appointed counsel was ineffective because he failed to investigate whether that firing would have provided Wagner with a potential defense to the charges against him. Wagner claims counsel advised Wagner that it was in his best interest to plead guilty before counsel investigated the allegations against the officers. D.E. 501 at 5-6. The attorney who represented Wagner before he pled guilty is now deceased. D.E. 491 at 18.

The only evidence in the record related to the firing of Sheriff's department deputies is from a criminal docket call on August 5, 1991, three weeks before Wagner's guilty plea. See D.E. 328, 174. The government's description of the investigation which began in 1989, included references to taped conversations between Nueces County deputies and a videotape showing marijuana being loaded onto Wagner's aircraft. D.E. 328 at 5.

Two Nueces County Sheriff's deputies were mentioned during docket call. Those deputies were no longer with the department. Defense counsel for one of Wagner's co-defendants advised the Court that one of the two was "dismissed for disciplinary reasons" and that his dismissal "may involve some sort of official misconduct on his part." Id. at 17. That counsel who represented Ronald Sam Gibbelini, one of the alleged organizers of the

conspiracy, advised the Court that he needed to investigate whether there was something that might affect the deputy's credibility. Id. The government advised the Court that the dismissals of the two deputies were related to administrative issues, such as the timeliness of report writing and personality conflicts.[6] Id. at 36-37.

---

[6]   Counsel for the government advised the Court,

4 THE COURT: And what's Mr. Luna's problem? I mean
5 why is he no longer with the authorities? They believe
6 there's some sort of problem here that would affect his credi-
7 bility?
8 MR. CUSICK: Your Honor, actually both officer Luna
9 and Officer Alvarez left subsequent, not particularly to this
10 case, but have since ceased working for the Nueces County
11 Sheriff's Department and work --
12 THE COURT: Is that of their own volition or the determi-
13 nation of the Sheriff's Department?
14 MR. CUSICK: My understanding was the circumstances
15  was under their own volition, Your Honor.
16 MR. BERG: No, that's not right, Your Honor, I
17 believe --
18 THE COURT: Well, what's the answer?
19 MR. BERG: The answer, Your Honor, as I understand
20 it --
21 THE COURT: Well, what is, what's going to be dis-
22 closed to these counsel?
23 MR. BERG: As I understand it, what will be dis-
24 closed, I could be wrong on this, but the best information I
25 have is that Mr. Luna was somewhat slow writing offense
1 reports when he was with the Drug Enforcement Administration
2 Task Force, assigned to there by the Sheriff's department, that
3 he had some discussions that may be characterized as heated,
4 perhaps with Mr. Flannery, who is in charge of the Task
5 Force. I could be wrong about this. Mr. Flannery brought
6 that to the attention of the Sheriff. The Sheriff spoke with
7 Mr. Luna about it. Their conversations were not satisfactory
8 and the Sheriff terminated Mr. Luna. It was a ---
9 THE COURT: There's one other person.
10 MR. BERG: Well, that other person has not been
11 mentioned by any defense counsel, He's only been mentioned by

During rearraignment, the government's factual recitation stated that the only involvement of the Nueces County Sheriff's deputies with Wagner and Baumhardt, the pilot and co-pilot, was to accept payment for the marijuana and to load it into the aircraft Wagner owned. Wagner was arrested after drugs were loaded onto his aircraft.[7]

---

12 Mr. Cusick.
13 THE COURT: Is he in this case?
14 MR. BERG: He is, Robert Alvarez, and I'm not quite
15 certain why he left, but I think it was personality conflict
16 type thing, much the same as Mr. Luna.

Id.

[7]  The government described the portion of the conspiracy that involved Wagner as follows,

10 On separate trips, Officer Alvarez then took
11 Mr. Wagner and then Mr. Baumhardt to the airport. Mr. Wagner
12 was taken first, because he was going to install a Lorean
13 (phonetic) navigation system onto the airplane and to make sure
14 everything was ready to go. Mr. Baumhardt was brought after
15 the money had changed hands and at approximately 9:15 a.m. on
16 the morning of September the 16th, 1989, undercover officers
17 arrived with a van, which had 13 bundles of marijuana that was
18 wrapped in wallpaper. As the van approached the airplane,
19 Mr. Wagner opened the cargo door and Mr. Wagner and Baumhardt
20 went and stood around on the other side of the airplane. The
21 van was backed up. Officer Alvarez and an Officer Apusin
22 (phonetic) then loaded the marijuana onto the airplane and at
23 that point all the subjects were apprehended.
             *       *       *       *
6 . . . .the
7 officers went on further with the investigation that occurred
8 until the end of October.
9 The evidence would show that Mr. Wagner and Baumhardt
10 were involved on this and only this phase of the operation,
11 which involved 204 kilograms of marijuana. . . . .

D.E. 474 at 24-25.

Based upon the facts in this record, there is no evidence that original counsel did not make an investigation, or that the results of such an investigation would have proved fruitful. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989); see also Greer v. Thaler, 380 Fed.Appx. 373 at *12 (5th Cir., May 17, 2010) (per curiam) (designated unpublished). Wagner's mere allegation that counsel should have done more is insufficient to establish that counsel's conduct fell below professional standards or prejudiced Wagner.

### 4. *Claim that guilty plea was unknowing and involuntary*

Wagner contends that counsel did not advise him of the elements of the conspiracy charge against him. Assuming without deciding that counsel did not inform Wagner of the elements of conspiracy to possess, the Court informed Wagner of the elements that the government was required to prove. D.E. 474 at 11-13. Wagner testified that the Court's description of the elements described his conduct,

> 21 THE COURT: Count one accuses you of violating Title
> 22 21, Section 846. That statute makes it unlawful for any person
> 23 to conspire with another person to violate the Controlled
> 24 Substances Act of the United States. Specifically, this count
> 25 accuses you of conspiring with certain other persons here
> 1 listed and two of you among yourselves and certain other
> 2 persons here listed -- of conspiring between August the 17th of
> 3 1989 and October the 27th of 1989 to possess more than 100
> 4 kilograms of marijuana with the intention of distribution.
> 5 To prove that you committed that crime, and it's
> 6 alleged that that activity occurred here in the Southern
> 7 District of Texas, to prove that you are guilty of this
> 8 offense, the government must prove each of the following

9 matters beyond a reasonable doubt.
10 First, that there was such a conspiracy, an agreement
11 between two or more persons to violate the law as alleged here,
12 the possession of more than 100 kilograms of marijuana with the
13 intention of distribution.
14 Secondly, the government must prove that you were
15 aware of that agreement and that you made yourself a part of
16 that agreement knowing of its unlawful goals and joining in
17 that conspiracy in an attempt to bring about the unlawful
18 objective, the conspiracy. In other words, the government must
19 prove that you knew that there was an unlawful agreement and
20 that you made yourself a part of it, specifically to violate
21 the law. Do you understand, Mr. Wagner?
22 DEFENDANT WAGNER: Yes, I do.
            *       *       *       *
25 THE COURT: And, of course, the government must prove
1 those general concepts with respect to these facts in
2 particular. Does that sound like what you did, Mr. Wagner?
3 DEFENDANT WAGNER: Yes, it does.

Id.

A claim that counsel was ineffective requires proof of both actions that fall below

reasonable professional standards and prejudice to the client. Strickland, 466 U.S. at 693.

Wagner cannot demonstrate prejudice from counsel's alleged failure to advise him of the

elements of the crime because the Court advised him of the elements before he pled guilty.

See Armstead, 37 F.3d at 210 ("A court need not address both components of the inquiry if

the defendant makes an insufficient showing on one").

16

5. *Counsel's failure to object to enhancement for use of special skill at sentencing*

Wagner was assessed two points for use of a special skill, his pilot training, pursuant to § 3B1.3 of the sentencing guidelines.[8] Wagner admitted to Probation that he received pilot training, but complains that he was never granted a pilot's license and further claims that the aircraft was damaged and could not have taken off. D.E. 480 at ¶ 46, D.E. 501 at 14-15. He claims that counsel was ineffective because he failed to object to the two point enhancement.

Before sentencing, defense counsel filed objections to the PSR urging an objection to the enhancement on the grounds that Wagner did not have a pilot's license and the plane was not airworthy. D.E. 478 at p. 2-3. Counsel did not orally urge the objection, during sentencing.

Wagner admitted at rearraignment that he owned the aircraft, had flown it to Corpus Christi and agreed to fly it back to Chicago loaded with marijuana. D.E. 474 at 22-26. Wagner also described himself as "just the pilot" during rearraignment when asked whether he anticipated playing a role in the sale of the marijuana he was going to transport to Chicago. Id. at 26.

---

[8] Section 3B1.3 of the Sentencing Guidelines reads: "If the defendant ... used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. . . ."  Application Note 4 to this section states: "'Special skill' refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts."

The Sentencing Guideline Manual lists pilot as one of the examples of special skills to which § 3B1.3 applies. See also United States v. Chastain, 198 F.3d 1338, 1353 (11th Cir. 1999) (affirming points for hobbyist pilot who transported marijuana). In light of Wagner's testimony at rearraignment and the sentencing guideline application note, counsel's failure to object to points for use of a special skill does not constitute ineffective assistance of counsel.

### 6.  *Counsel's alleged failure to object to obstruction of justice*

Wagner was assessed points for obstruction of justice based upon his failure to appear at sentencing, his absence for 18 years, and his failure to revel his true name in the original proceedings. Wagner complains that counsel was ineffective at sentencing because he failed to object to the enhancement for obstruction of justice. His complaint is contradicted by the record. Counsel orally objected to the points for obstruction of justice at sentencing, but the Court overruled counsel's objection. D.E. 491 at 23-26. The issue was raised on appeal and the Fifth Circuit affirmed. No ineffectiveness is shown.

### 7.  *Counsel's failure to object to violations of Vienna Convention*

Assuming without deciding that Wagner has an individually enforceable right to assistance by his consulate pursuant to the Vienna Convention, this Court considers Wagner's claim that counsel should have objected to the Court's failure to facilitate his contact with the consulate. Wagner never states that he asked counsel for help or complained to counsel that he had not been able to contact the consulate. Wagner's claims of prejudice fail. As an initial matter, his first attorney had no reason to help him contact the German

18

consulate because Wagner had sworn he was a United States citizen. His second attorney objected to obstruction of justice, but was overruled by the Court, and Wagner's own testimony precludes his claim that counsel was ineffective for failing to object to special skill enhancement.[9] See Rosales v. Bureau of Immigration and Customs, 426 F.3d 733, 737-38 (5th Cir. 2005) (regardless of whether's petitioner's right under the Vienna Convention are protected under the United States Constitution, petitioner was not entitled to any relief because he had not shown that assistance from his consulate would have changed the result of his proceedings).

Despite the liberal reading this Court gives to *pro se* complaints, Wagner is required to state sufficient facts to state a claim. Conclusory allegations on critical issues in a § 2255 proceeding are insufficient to raise a constitutional issue. United States v. Woods, 870 F.2d 285, 288 n. 3 (5th Cir.1989); see also United States v. Jones, 614 F.2d 80 (5th Cir. 1980) (failure of movant to state specific facts, "is insufficient to state a constitutional claim.").

---

[9]   Wagner states,

Had counsel-II followed up on the order to allow petitioner to contact his consulate there is good likelihood that the results of the proceeding would have been different. But for the Vienna Convention violation, the defendant could have sought counsel from the Consulate and been advised of issues that would have helped with his confusion in the case matters. He could have been directed to look at alternatives to taking a guilty plea under a different light that shown by Counsel-I. The petitioner could have been more aware and prepared to raise the issues of the improper enhancement for "special skill" and "obstruction of justice" that was the inefficiency of Counsel-II.

D.E. 501 at 20.

Wagner has not demonstrated prejudice, nor has he stated facts to support a claim that counsel should have objected. No ineffective assistance is shown.

### 8. *Counsel's failure to establish Wagner's citizenship at sentencing*

Despite Wagner's claim that he was entitled to assistance from the German consulate, he also claims that he believed that he was a United States citizen in 1991 when he testified that his name was Mark Anthony Wagner and that he was a citizen of the U.S. D.E. 474 at 5. He claimed at that time he was born in the United States.[10]

Wagner now claims that he was born in April 1952 in West Berlin, Germany during its occupation by Allied Forces. D.E. 501 at 20. In 2009, Wagner gave this information to the Probation Department before sentencing. D.E. 480 at ¶ 40. In his previous interview with Probation in 1991, Wagner claimed that he was born in November 1953 in Charleston, South Carolina. Id.

---

[10]   Wagner testified,

9 THE COURT: How much education do you have,
10 Mr. Wagner?
11 DEFENDANT WAGNER: It's probably comparable to high
12 school.
13 THE COURT: What does that mean?
14 DEFENDANT WAGNER: Well, it's a different system in
15 Europe. I went to school in Europe, so --
16 THE COURT: Are you an American citizen?
17 DEFENDANT WAGNER: Yes, I am.
18 THE COURT: How did you become an American citizen?
19 DEFENDANT WAGNER: I was born in this country.

Id.

At sentencing, Wagner testified that he returned to the United States on a German passport under the name Lothar Starsinsky. D.E. 491 at 19. Wagner has not presented any evidence in this § 2255 proceeding that establishes where he was born, the citizenship of his parents, or his citizenship status at any time. The information Wagner provided to the Probation Department for preparation of the PSR in 1991 is inconsistent with that he provided in 2009. Either Wagner's statements in 1991 were false, or his statements in 2009 were false. Wagner does not claim he asked his defense counsel to make a record of his citizenship. Moreover, even if counsel had successfully established that Wagner did not misrepresent his citizenship, which is unlikely on this record, Wagner undisputedly misrepresented his correct name to the Court. Under these facts, Wagner has not shown that counsel's failure to prove Wagner's citizenship prejudiced him.

## V.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Wagner has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.  United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Wagner is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. See Jones, 287 F.3d at 329.

## V.  CONCLUSION

For the foregoing reasons, Wagner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 499) is DENIED. He is also denied a Certificate of Appealability.

It is so ORDERED this 16th day of April, 2012.

_____
HAYDEN HEAD
SENIOR U.S. DISTRICT JUDGE

23